

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Steven D'Aguanno*       *CAMDEN FEDERAL BUILDING and*      856/757-5011
*Assistant U.S. Attorney*      *UNITED STATES COURTHOUSE*      *FAX*  856/968-4917
     *401 Market Street, 4th Floor*
     *P.O.Box 2098*
     *Camden, NJ 08101*

October 27, 2006

**VIA HAND DELIVERY & ECF**

Honorable Jerome B. Simandle
United States District Judge
Camden Federal Building & U.S. Courthouse
401 Market Street
Camden, NJ 08101

     Re:  United States v. William Brown, et al.
         Crim. No. 06-126 (JBS)

Dear Judge Simandle:

     On October 19, 2006, counsel for defendant William Brown filed a Motion in Limine (hereafter "Defense Motion") seeking to exclude, inter alia, DNA evidence in the above-captioned matter.[1]  Please accept this letter brief in lieu of a formal brief opposing the Defense Motion, and seeking an order

---

[1] Counsel for defendants Lawrence Johnson and Rasheen Mines have indicated their desire to join in the Defense Motion.  Counsel for defendant William Hernandez has informed the government that Hernandez does not wish to join in the motion.  The government will address the proffered DNA evidence with respect to defendants Brown, Johnson, and Mines (hereafter "the defendants").

     In addition to the admissibility of the DNA evidence, counsel for defendant Brown raises two additional issues.  First, Brown claims that evidence regarding an unidentified contributor to one of the DNA samples be entered into the FBI's DNA database.  The sample does not meet the FBI's criteria for entry into the database and therefore cannot be entered.  Second, Brown contends that the victims should be precluded from providing in-court identifications because the photo arrays were allegedly unnecessarily suggestive.  As Brown concedes, this issue has been rendered moot by virtue of this Court's recent opinion denying Brown's motion to suppress the photo identifications on that basis.

from this Court authorizing the admission of the DNA evidence as set forth in Federal Bureau of Investigation Laboratory Report dated May 19, 2006 (hereafter "FBI DNA Report") (attached hereto as Exhibit A).

As the defendants see it, the proffered DNA evidence should be excluded under Federal Rule of Evidence 403 because "the evidence is of such marginal statistical significance that its admission would unduly confuse and prejudice the jury." (Defense Motion at 2). Contrary to the defendants' bald assertions, there is absolutely no authority mandating the exclusion of the type of statistical random match probabilities at issue in this case.[2] As discussed below, the relevant authority requires that the Defense Motion be denied and that the evidence be submitted to the jury with any necessary limiting instructions.[3]

Federal Rule of Evidence 403

The proffered DNA evidence should not be excluded by operation of Federal Rule of Evidence 403, which provides:

> Although relevant, evidence may be excluded if its probative value is <u>substantially outweighed</u> by the danger of <u>unfair</u> prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added). See <u>United States v. Cross</u>, 308 F.3d 308, 324 (3rd Cir. 2002) (relevant evidence can be

---

[2] The Defense Motion cites several cases in which random match probability statistics were admitted at trial (<u>see</u> Defense Motion at 3-4). The defendants appear to suggest that, because those cases involved higher value probabilities, lower value probabilities must necessarily be excluded. As discussed throughout this letter brief, the relevant authority offers no support for this conclusion.

[3] The Third Circuit has recognized the efficacy of limiting instructions in cases in which the prejudicial effect of the admission of certain evidence could be considered profound. See e.g., <u>United States v. Scarfo</u>, 850 F.2d 1015, 1020-21 (3d Cir.) (limiting instruction sufficiently removes the prejudice from admission of defendant's prior murders), <u>cert. denied</u>, 488 U.S. 910 (1988); <u>United States v. O'Leary</u>, 739 F.2d 135, 136-37 (3d. Cir. 1984) (limiting instruction "lessen[s] any possibility of prejudice" from admission of defendant's 29 prior cocaine sales), <u>cert. denied</u>, 469 U.S. 1107 (1985).

excluded under Rule 403 only if its prejudicial effect "substantially" outweighs its probative character); United States v. Johnson, 199 F.3d 123, 128 (3rd Cir. 1999) ("In weighing the probative value of evidence against the dangers in Rule 403, the general rule is that the balance should be struck in favor of admission") (internal punctuation omitted).  Given the government's strenuous burden of proof in a criminal case, in particular establishing the identity of the defendants as the individuals who committed the charged offenses, evidence that supports the reliability of the government's other evidence is highly probative.  This is particularly true where, as here, it is anticipated that the defense will vigorously attack the government's evidence of eyewitness identification.  See United States v. Henthorn, 815 F.2d 304, 308 (5th Cir. 1987).

      Because all probative evidence is prejudicial to the defense, the test is not simply whether the evidence is prejudicial.  If so, no relevant evidence would be admissible.  See United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979).  The evidence must be _unfairly_ prejudicial and must _substantially outweigh_ its probative value.  As a result, courts have cautioned that Rule 403 should be used sparingly because it permits the exclusion of otherwise relevant and admissible evidence.  See id.; see also Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716, 722 (11th Cir. 1982); Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1502 (11th Cir. 1985).

      "Unfair prejudice within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." Cross, 308 F.3d at 324, n.23, quoting Fed. R. Evid. 403, Advisory Committee Notes.  Here, the DNA evidence will be presented only to corroborate the reliability of the government's other evidence.  As such, the evidence will not elicit an improper emotional reaction from the jury.  Such evidence, therefore, should not be excluded under Rule 403.

Understanding DNA Evidence and Statistics

      It is well-settled that the type of DNA testing utilized in this case, i.e., Polymerase Chain Reaction and Analysis of Short Tandem Repeats (PCR/STR), has been deemed admissible and reliable in numerous federal courts in a variety of jurisdictions.  United States v. Morrow, 374 F.Supp.2d 51, 61 (D.D.C. 2005), citing United States v. Wright, 214 F.3d 1020, 1027 (9th Cir. 2000), cert. denied, 531 U.S. 969 (2000); United States v. Beasley, 102 F.3d 1440, 1448 (8th Cir. 1996), cert. denied, 520 U.S. 1246 (1997); United States v. Shea, 957 F.Supp.

331, 338-39 (D.N.H. 1997); United States v. Ewell, 252 F.Supp.2d 104, 106 (D.N.J. 2003); United States v. Cuff, 37 F.Supp.2d 279, 282 (S.D.N.Y. 1999); United States v. Gaines, 979 F.Supp. 1429, 1433-34 (S.D.Fla. 1997); United States v. Trala, 162 F.Supp.2d 336, 350-51 (D.Del. 2001); and United States v. Lowe, 954 F.Supp. 401, 416-17 (D.Mass. 1996).

In Morrow, the Court was confronted with a similar challenge under Rule 403 to the admissibility of DNA evidence which the defendants argued "appear[ed] to have a relatively low level of statistical significance, ranging from a 1:12 probability of selecting an unrelated individual in the relevant population to a 1:1 probability of selecting an unrelated individual."  United States v. Morrow, 374 F.Supp.2d at 62.[4]  After conducting a Rule 403 analysis, the Court concluded that such "DNA evidence indicating a relatively low match probability significance may be introduced in the Government's presentation of its direct evidence, subject to certain parameters and restrictions."  Id. at 53.[5]

In reviewing the instant defendants' claims, it is critically important that the concept of random match probability statistics be fully understood.  For example, a probability of 1:30 means that the probability of selecting some other unrelated person at random from the relevant population who could be a potential contributor to the DNA sample would be 1 in 30.  In other words, for any given sample of 30 people in the relevant population (e.g., African American), 1 person could be a potential contributor while the other 29 could definitively be excluded as potential contributors.  See FBI DNA Report at 2, Specimen Q11.

---

[4]The term "unrelated individual," as used in the DNA case law and by experts, simply means some other person who has nothing to do with the crime at issue.

[5]The government acknowledges at the outset that the use by DNA experts (as well as in some of the relevant case law) of terms such as "high probability random match" is counterintuitive and therefore confusing.  The reason is that a "high probability random match" actually means that there is a correspondingly low probability that a particular DNA sample can be attributed to a particular person.  Some courts have recognized this anomaly.  See Morrow (the court simply changed the terminology to avoid confusion; see text accompanying this footnote); United States v. Chischilly, 30 F.3d 1144 (9th Cir. 1994), cert. denied, 513 U.S. 1132 (1995) (warning the government to be careful how it frames the statistics at trial).  Therefore, the government will not use terms such as high or low probability in either this brief or in arguments before the jury.

Therefore, for the purposes of the instant case, the range of possible DNA results can be divided into three categories: (1) where the odds of a defendant's DNA matching a particular DNA sample are so great that a DNA expert can opine with certainty that there is a match (like the 1:280,000,000,000 for two of the William Hernandez samples in the instant case); (2) results in the middle, where a defendant's DNA is consistent with the particular DNA sample, but so is the DNA of many other people (like the 1:12 probability in Morrow, and the remaining results in the instant case); and (3) where an expert can definitively conclude that a defendant's DNA does <u>not</u> match a particular DNA sample (which is analogous to a fingerprint expert opining that a defendant's fingerprints do <u>not</u> match a particular latent print).[6]

It is also important to note that random match probability statistics are ultimately influenced by the quantity and quality of the DNA sample. For example, with respect to defendant Hernandez and the 1:280,000,000,000 statistic, the particular DNA sample was sufficient such that the statistic conclusively demonstrates that Hernandez is the source of the DNA sample. <u>See</u> FBI DNA Report at 4, Footnote 3. A probability like 1:30, however, does not indicate that a subject is <u>not</u> a potential contributor. The reasons why the statistic was only 1:30 were that the particular DNA sample was small and more than one person's DNA was in it. As discussed below, PCR DNA analysis is designed to <u>exclude</u>, not include, potential contributors.

As the Court in <u>Morrow</u> correctly recognized in conducting its Rule 403 analysis:

> . . . PCR testing presents the jury with a sliding scale wherein the evidence's probative value depends, in large part, on its random match probability. Indeed, as numerous courts have realized, because PCR testing creates a sliding scale of evidence, it is improper for a court to step in and demarcate some arbitrary random match probability ratio, above which evidence will be hidden from the jury. Instead, the DNA evidence should be presented to the jury, which – after cross-examination and careful consideration – may

---

[6]Although the DNA case law often uses five categories, <u>see, e.g.</u> <u>Morrow</u>, 374 F.Supp.2d at 54, the Government posits that in the instant case the above-described three categories make the subject easier to understand.

- 5 -

    afford it the weight that it is due.

Id. at 65.

The Relevant Case Law

    In reaching its conclusions, the Court in Morrow relied upon the decisions in United States v. Bonds, 12 F.3d 540 (6th Cir. 1993), and United States v. Hicks, supra. In Bonds, the trial court admitted DNA evidence linking the defendants to the crime. On appeal, the Sixth Circuit affirmed the admission of the evidence, which it deemed "clearly probative," because the evidence "linked Bonds to the murder scene when no direct evidence existed to do so." United States v. Bonds, supra, at 567. In addressing the "perceived infallibility" of DNA evidence, the Sixth Circuit noted that "the damaging nature of the DNA evidence to defendants and the potential prejudice does not require exclusion." Id. at 568. In applying this rationale to the DNA evidence at issue in Morrow, the Court concluded that "the DNA evidence in question here has probative value because it shows that certain defendants cannot be excluded from a connection to particular articles of evidence." United States v. Morrow, supra, at 64. Similarly, the DNA evidence in the present case has significant probative value because it demonstrates that defendants Brown, Johnson, and Mines cannot be excluded as potential contributors to the DNA recovered from the articles found in the vehicle used in the robbery.

    The Court in Bonds also emphasized that the "[d]efendants had an opportunity to cross examine all of the Government's witnesses to show why the results were unreliable, the procedures flawed, and the DNA evidence not infallible." Id. at 568. Moreover, the Court noted that "defendants' concern that the jury relied unduly on this circumstantial DNA evidence cannot be resolved by excluding the evidence under Rule 403. Their concern is accommodated through a Rule 29 motion for judgment of acquittal to assure that the Government produced enough evidence, circumstantial or direct, to support a verdict." Id., citing Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 2798 (1993) (quotation and additional citation omitted). In the present case, the defendants will similarly be afforded a full and fair opportunity to cross examine the government's expert witness regarding the procedures used to obtain the DNA results and the related random match probabilities. Any notion that the jury will place undue emphasis on this evidence cannot, and should not, be resolved by exclusion of the DNA evidence under Rule 403. Rather, any potential prejudice can be neutralized by effective parameters for the presentation of such

evidence and, if appropriate, a limiting instruction.[7]

In United States v. Hicks, the Ninth Circuit was called upon to address the type of DNA evidence at issue in the present case, as well as that which was at issue in Morrow. In Hicks, a man and woman were carjacked and assaulted. Physical evidence recovered from the woman "did not result in a statistical probability that Hicks contributed to the sample; it *only* concluded that Hicks could not be excluded as a contributor to the sample." United States v. Hicks, supra, at 846 (footnote omitted; emphasis in original). Following its analysis under Rule 403, the Ninth Circuit concluded that:

> Besides the doubtful prejudice that the single PCR result produced in this case (since none of the three perpetrators could be excluded as possible contributors to the sample), the evidence had the probative value of helping to identify the carjackers. It was almost certainly not sufficient evidence to identify Hicks as one of the carjackers, but it helped to corroborate other evidence of identity to build a wall of evidence supporting that conclusion. The probative value of the PCR results was not substantially outweighed by the prejudice to Hicks of the evidence.

Id.

In applying this conclusion to random match probabilities that were very similar to those in the present case,[8] the Court in Morrow held that, because the defendants could not be excluded, "the DNA evidence remains probative, and helps corroborate other evidence and support the Government's case as to the identity of the relevant perpetrators." Morrow at 65. A similar result is required in the present case, where the DNA evidence and the resultant random match probabilities are corroborative of the other evidence and thus support the

---

[7]It is noteworthy that the DNA expert retained by defendant Brown did not find any basis upon which to question the FBI's methodology or results regarding the DNA evidence. As a result, the only issue before this Court and, indeed, before the trial jury, involves the meaning of the random match probability statistics contained in the FBI's DNA Report.

[8]The probabilities in Morrow ranged from 1:1 to 1:12. The only reachable conclusion in Hicks was that Hicks could not be excluded as a potential contributor to the DNA sample. The probabilities in the present case range from 1:3 to 1:180. See FBI DNA Report at 2-3.

government's case regarding the identity of the defendants as the individuals who committed the crime.

Protections Against Prejudicial Effects

A number of factors will protect defendants from the jury's possible misuse of the DNA evidence and statistics.  As the Court in Morrow, "[i]ndeed, the low statistical significance actually benefits Defendants, as Defendants can argue that having random match probabilities running between 1:12 and 1:1 means that hundreds, if not thousands, of others in the [geographic area] cannot be excluded as possible contributors as well. . . . Given this avenue of attack, Defendants may significantly reduce any prejudice from the introduction of low-value DNA evidence." Id. (citation and quotation omitted).  Such an approach is equally available to the defendants in the present case to ensure that the DNA evidence is viewed in its proper context, thereby reducing any possible prejudice.

This argument is further supported by the relative significance of the random match probabilities present here.  The jury will hear testimony that defendant Hernandez is the source of the DNA found on the articles of evidence linked to him, due to the 1 in 280,000,000,000 probability.  In light of the fact that such evidence will be presented, defendants Brown, Johnson, and Mines will be able to easily attack the relative significance of the DNA evidence introduced against them simply by referring to the strength of the evidence regarding Hernandez.  In addition, as with the fingerprint evidence in this case, the defendants will be able to argue that there is no evidence indicating when the DNA evidence was placed on the relevant articles of evidence.

If this Court were to exclude the DNA evidence against defendants Brown, Johnson, and Mines, the practical effect on the government's case would be devastating.  The jury almost certainly will speculate (even if defense counsel do not so argue) that the government's "failure" to introduce such evidence means that no such evidence exists and therefore defendants Brown, Johnson, and Mines were not involved in the crime.  That would clearly be a false conclusion in light of the evidence and relevant authority.

As the relevant case law clearly contemplates, the correct approach is to admit such evidence, subject to the safeguards of cross-examination and any necessary limiting

- 8 -

instructions.

As the Ninth Circuit recognized in United States v. Chischilly, 30 F.3d 1144 (9th Cir. 1994), cert. denied, 513 U.S. 1132 (1995), "the Government must be 'careful to frame the DNA profiling statistics presented at trial as the probability of a random match, not the probability of the defendant's innocence . . . .'" United States v. Morrow, supra, 374 F.Supp.2d at 66, quoting United States v. Chischilly, 30 F.3d at 1158.  The government is well aware, see note 5 supra, that arguments to the jury concerning DNA evidence must be, and therefore will be, carefully drawn.[9]  "The courts that have dealt with this potential problem have found that careful oversight by the district court and proper explanation can easily thwart this issue."  Morrow, at 66, citing United States v. Chischilly, 30 F.3d at 1158; United States v. Shea, 957 F.Supp. At 345.

For the reasons set forth above, the Defense Motion to exclude the DNA evidence should be denied, and an Order entered allowing the government to introduce the DNA evidence against defendants Brown, Mines, and Johnson, consistent with the FBI DNA Report.

                                          Respectfully submitted,

                                          CHRISTOPHER J. CHRISTIE
                                          United States Attorney

                                          /s/ STEVEN D'AGUANNO
                                          STEVEN D'AGUANNO
                                          Assistant United States Attorney

                                          /S/ HOWARD WIENER
                                          HOWARD WIENER
                                          Assistant United States Attorney

cc:   All counsel via facsimile

---

[9] The government will not argue that the DNA evidence regarding defendants Brown, Johnson, and Mines, establishes their identities as the perpetrators of the crime.  Rather, the government will argue, consistent with the findings contained in the FBI DNA Report, that defendants Brown, Johnson, and Mines cannot be excluded as potential DNA contributors to the relevant articles of evidence.